```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       WESTERN DIVISION
```

Douglas L. Lutz, Trustee )
for the Liquidation of )
Donahue Securities, Inc. )
and S.G. Donahue & Company, )
Inc., )
 )
              Plaintiff, ) Case No. 1:03-CV-750
 )
   vs. )
 )
St. Paul Fire & Marine )
Insurance Company, )
 )
             Defendant. )

O R D E R

This matter is before the Court on Defendant St. Paul Fire & Marine Insurance Company's motion for summary judgment (Doc No. 35) and objections to and motion to strike Plaintiff's summary judgment evidence (Doc. No. 38). For the reasons set forth below, Defendant's motion for summary judgment is well-taken and is **GRANTED**; Defendant's objections to and motion to strike Plaintiff's summary judgment evidence is **MOOT**.

I. Background

The issue presented in the instant motion for summary judgment is whether Stephen G. Donahue was an "employee" of Donahue Securities, Inc. ("DSI") under the terms of commercial crime insurance policies issued by Defendant St. Paul Fire & Marine Insurance Company ("St. Paul").[1] The Court agrees with

---

[1] One of the policies were actually issued by St. Paul's predecessor United States Fidelity & Guaranty Company. For consistency, the Court, like the parties, will refer to St. Paul as the issuer of both policies.

St. Paul that Donahue was not an employee of DSI under the terms of the policies and, thus, the losses caused by Donahue are not covered.

DSI was an Ohio corporation and a broker registered with the Securities & Exchange Commission to sell securities. Complaint ¶ 9; Amended Answer ¶ 9. Stephen Donahue was DSI's president and sole shareholder. Complaint ¶ 14; Amended Answer ¶ 14. For a time, Donahue was one of two directors of DSI but was DSI's only director after March 8, 2000. DSI never held formal board meetings. DSI's other director, Richard Chitwood, a vice president of DSI and its compliance officer, testified that he was unaware how he became a director of DSI, that his day-to-day job responsibilities did not change as a result of being a director, and that he did not have any decision-making role as a director. Chitwood Dep. at 13-18.

Donahue embezzled money from DSI's clients to pay for his personal expenses as well as expenses of the corporation. Instead of investing clients' money in either a money market fund or a tax-free bond fund, as he represented he would, Donahue put clients' funds into accounts under his control. Donahue would then disburse money from these accounts to himself.[2]

As indicated above, St. Paul issued two commercial crime liability policies to DSI. The first policy covered the

---

[2] On June 3, 2003, Judge Herman Weber sentenced Donahue to forty-six months of imprisonment for employing a scheme or artifice to defraud clients in violation of 15 U.S.C. § 80b-6. See United States v. Donahue, Case No. 1:02-CR-81 (S.D. Ohio).

period from August 23, 1997 to August 23, 2000.  The second policy covered the period from August 23, 2000 through August 23, 2003.  The parties agree that the pertinent policy language is the identical in both policies.  The parties have not been able to locate a copy of the first policy, but they have stipulated as to its form and content.

The policies cover loss as a result of "employee dishonesty."  Doc. No. 33, Ex. A, at SPFMIC 000723.  "Employee dishonesty" means:

> only dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:
>
> (1) Cause you to sustain a loss; and also
>
> (2) Obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for:
>
>   (a) the "employee"; or
>   (b) any person or organization intended by the "employee" to receive that benefit.

Id.  Finally, the policy defines "employee" as:

> a. Any natural person:
>
> (1) While in your service (and for 30 days after termination of service);  and
>
> (2) Whom you compensate directly by salary, wages or commissions; and
>
> (3) <u>Whom you have the right to direct and control while performing services for you.</u>

Id. at SPFMIC 00721 (emphasis added).

3

On March 6, 2001, in Civil Case No. 1:01-CV-117, the Court appointed Douglas L. Lutz the trustee for the liquidation of Donahue Securities, Inc.  Complaint ¶ 1.  Contemporaneously, the case was removed to the Bankruptcy Court for a liquidation proceeding pursuant to the Securities Investor Protection Act, 15 U.S.C. § 78aaa, et seq.  On June 27, 2003, Plaintiff filed a complaint against St. Paul in the Bankruptcy Court to recover up to the limits of the two policies.  The parties then agreed to withdraw the reference to the Bankruptcy Court because it is a non-core proceeding.  The case was transferred to the docket of this Court on October 29, 2003.

St. Paul now moves for summary judgment on Plaintiff's complaint.  Although St. Paul asserts various bases for judgment on the complaint, as indicated, the dispositive issue is whether Donahue was an "employee" under the terms of the policies.  St. Paul's motion is now ready for disposition.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be

4

drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties'

5

differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time

for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

Initially, the Court observes that the parties have not addressed the state law governing the interpretation of the insurance policies in controversy.  The Court finds, however, that Ohio law applies because the policies were executed and delivered in Ohio by an Ohio resident and an Ohio licensed insurance agent, and the policies covered a business which was located in Ohio.  See Miller v. State Farm Mut. Auto. Ins. Co., 87 F.3d 822, 827 (6th Cir. 1996); Ohayon v. Safeco Ins. Co. of Ill., 747 N.E.2d 206, 213 (Ohio 2001).

7

St. Paul contends that it is not liable under the policies for Donahue's defalcation because he was not an "employee" under the terms of the policies.  St. Paul argues that Donahue was not an employee because, as DSI's sole shareholder and director, he dominated the company, and, as a result, DSI did not have the right to direct and control Donahue's services.  In opposition, Plaintiff argues that DSI did have the right to control Donahue because under NASD regulations Chitwood had the right to supervise Donahue's activities as a registered representative.  Plaintiff also argues that St. Paul is estopped from denying that Donahue was an "employee" because it charged a premium which included Donahue as a ratable employee.

St. Paul's position that an "employee" does not include a shareholder who dominates the corporation is based more on what might be termed an industry standard applicable to commercial crime policies rather than an individualized interpretation of the policies issued to DSI.  This is probably a result of the insurance industry's use of a standardized form for commercial crime policies.  Nevertheless, there is widespread support for the proposition that a person who either dominates a corporation or is the corporation's alter ego is not an "employee" as a matter of law where the policy defines "employee" as a person whom the insured has the right to direct and control.  The Court notes that St. Paul specifically disclaims reliance on an alter ego theory in support of its motion.  See Doc. No. 37, at 11-12. It appears, however, that there is very little to distinguish

8

between the two theories.  The common thread between the dominate shareholder theory and the alter ego theory is that if one person exercises complete control over the corporation, his acts are corporation's acts.  Thus, there is no coverage because commercial crime policies were not designed to protect corporations from their own dishonest acts.  Indeed, in this case, the policies specifically disclaim coverage for the dishonest acts of the named insured.  See Doc. No. 35, Ex. A, at SPFMIC 000719.

In any event, the Court includes here a non-exhaustive list of those cases which have granted judgment in favor of an insurance company based on either a dominate shareholder theory or an alter ego theory:  Bird v. Centennial Ins. Co., 11 F.3d 228, 232-33 (1st Cir. 1993) (dominate shareholder); In re World Hospitality, Ltd., 983 F.2d 650, 653 (5th Cir. 1993)(dominate shareholder); In re Payroll Express Corp., 216 B.R. 344, 363 (Bankr. S.D.N.Y. 1997)(dominate shareholder), aff'd, 186 F.3d 196 (2nd Cir. 1999); Hartford Fire Ins. Co. v. Conestoga Title Ins. Co., 746 A.2d 460, 461-62 (N.J. Super. Ct. App. Div. 2000)(dominate shareholder); Three Garden Village Ltd Part. v. United States Fid. & Guaranty Co., 567 A.2d 85, 90-93 (Md. 1989)(alter ego); Employer's Admin. Serv., Inc. v. Hartford Accident & Indem. Co., 709 P.2d 559, 562-63 (Az. Ct. App. 1985)(alter ego).

Other cases have recognized the dominate shareholder principle but have refused to apply it because the facts of the

case showed that the insured's board of directors either had no knowledge of the defalcator's illegal or dishonest activities or were actively involved in the corporation's affairs. For instance, in Transamerica Ins. Co. v. Federal Dep. Ins. Co., 489 N.W.2d 224 (Minn. 1992), the court held that the defalcator was not the alter ego of the corporation, even though he owned 93.5% of the bank's stock, was the bank's president, and appointed the board of directors, who served at his pleasure, because the board met regularly, participated in the banks's affairs, and continued to operate the bank after the defalcator resigned. Id. at 228. In General Fin. Corp. v. Fidelity & Cas. Co. of N.Y., 439 F.2d 981 (8th Cir. 1971), the Court refused to apply the dominate shareholder theory even though the defalcator and his wife owned a majority of the stock and even though the board of directors merely rubber stamped his decisions. Id. at 984. Apparently, in order to impose liability under the policy, it was sufficient for the General Finance court that the board of directors had the right to control the defalcator and actually participated, if only as a cipher, in the company's affairs.

        Nevertheless, as can be readily seen, none of these cases were decided by an Ohio court. In this non-core adversary proceeding, the Court is obligated to follow the law of the state of Ohio, and, if the Supreme Court of Ohio has not decided the issue, to ascertain from all available sources how that court would respond if confronted with this issue. In re Akron-Cleveland Auto Rental, Inc., 921 F.2d 659, 662 (6th Cir. 1990).

The Court notes that the Supreme Court of Ohio has not specifically addressed the issue whether a dominate shareholder is an "employee" under a commercial crime insurance policy, but if faced with this issue the Court concludes that the Supreme Court would endorse application of the dominate shareholder rule. The Court reaches this conclusion for several reasons.

First, the Supreme Court of Ohio has already determined that an insurance company is not liable under a commercial crime insurance policy where the defalcator is the alter ego of the corporation. See Thrift Fed. Sav. & Loan Ass'n of Cleveland v. Overton, 563 N.E.2d 289, 292-93 (Ohio 1990). The Thrift Federal Court's opinion, however, was not based on a conclusion that an alter ego of the corporation is not an employee of the corporation. Rather, the Court held that the alter ego's were the acts of the corporation, which was not covered under the policy as the insured. Id. at 293. Nonetheless, the reasoning of the Thrift Federal Court is entirely consistent with the rationale behind the dominate shareholder theory - that commercial crime policies were not designed to protect insureds from their own dishonest acts. See supra, at 9. Thus, the Court believes that the Supreme Court of Ohio would readily accept a doctrine based on the same principle as the alter ego theory.

Second, the Supreme Court of Ohio has held in a number of cases that it is contrary to public policy to insure against one's own intentional acts. See Doe v. Shaffer, 738 N.E.2d 1243, 1245 (Ohio 2000)(cataloging cases). Again, these holdings are

11

consistent with both the dominate shareholder theory and the alter ego theory in that they support the rationale that a corporation should not be permitted to insure against its own malfeasance.

Third, and finally, the Court finds that the Supreme Court of Ohio would adopt the dominate shareholder rule because it does appear to be the majority rule in this country. Where courts have not applied the dominate shareholder or alter ego rule to deny coverage, it has been because the record demonstrated that the board of directors exercised some control over the corporation, not because of any flaw in the rule itself. See, supra, at 10-11. The Court believes that it is unlikely that the Supreme Court of Ohio would reject what appears to be a nearly universal legal principle.

Accordingly, for the reasons stated, the Court finds that the Supreme Court of Ohio would adopt the dominate shareholder rule. Therefore, in this case, the Court holds that a shareholder who dominates the company is not an "employee" under the terms of a commercial crime or employee dishonesty insurance policy.

In this case, the record demonstrates that Stephen Donahue was a dominate shareholder and, thus, not an "employee" within the meaning of the policies at issue. It is uncontroverted that Donahue was the only shareholder of DSI and was president of DSI. Donahue was the only director of DSI for a period of time. It appears that the only other director that DSI

ever had was Richard Chitwood, who testified that he had no decision-making authority as a director and in fact could not even recall how he came to be appointed a director. DSI never held any formal board meetings. No one at DSI ever reviewed Donahue's correspondence or customer files. Chitwood dep. at 37-38. Chitwood had no authority to terminate or discipline Donahue. Id. at 136-37. In fact, Chitwood, testified that he was not able to control Donahue and had no control over the direction of the company. Id. at 18, 140.

Plaintiff argues, however, that the NASD regulations governing securities brokers gave Chitwood, as DSI's compliance officer, the right to supervise Donahue when Donahue performed services as a registered representative. Plaintiff points out that Chitwood occasionally approved new sales transactions that Donahue presented and that Chitwood believed that he had the right to control Donahue in Donahue's capacity as a registered representative. Nevertheless, this evidence is insufficient to create an issue of fact whether Donahue was subject to DSI's control.

Chitwood's right to supervise Donahue and his approval of some individual transactions is not the equivalent of controlling Donahue. The issue, however, is not whether Chitwood, an individual employee, had the right or ability to supervise Donahue, but rather whether DSI as a corporation controlled Donahue. As the Court has just indicated, no one at DSI controlled Donahue's activities. Indeed, as St. Paul

observes, when Chitwood confronted Donahue about Donahue's improper use of the client remitting account, Donahue told Chitwood that DSI was going to do business that way. Chitwood Dep. at 136-37. In other words, Donahue's way of doing business was DSI's way of doing business.

Moreover, most courts are in agreement that the insured's theoretical right to control an individual is insufficient to make that individual an "employee" under the policy. Rather, in order to be an "employee," there must be some indication of actual control of the individual by the insured. See Bird, 11 F.3d at 233, 233 n.7; Hartford Fire Ins. Co., 746 A.2d at 462; Employer's Admin. Serv., 709 P.2d at 563. Again, the reason for rejecting this argument is to prevent the insured from profiting from its own wrongdoing. Thus, the theoretical right of supervision vested by the NASD regulations does not establish DSI's right to control Donahue such that he was an "employee" under the terms of the policies.

Plaintiff argues, however, that St. Paul charged an additional premium to insure Donahue as a ratable employee, and, therefore, is estopped from denying coverage on the grounds that he is not an employee. The Court disagrees. There is no question that St. Paul included Donahue as an at-risk employee in its calculation of the premium it charged for coverage. However, that was because Donahue was an officer and had access to money, securities, and other property. Doc. No. 36, Ex. D, Halverson Dep. at 22. Seven other employees of DSI were also included in

the calculation of the premium as at-risk employees. Id. In other words, for purposes of calculating the premium, St. Paul treated Donahue the same as it did other employees of DSI who posed a greater risk of loss because of the positions they held. There is no evidence that St. Paul charged an additional premium solely to insure any additional risk created by Donahue because of his position and ownership of DSI. Thus, this case is distinguishable from Fidelity & Dep. Co. of Md. v. USAFORM Hail Pool, Inc., 318 F. Supp. 1308 (M.D.Fla. 1970), in which the court held that there was coverage under the fidelity bond because the insurance company issued the policy knowing that the defalcator was the alter ego of the corporation. Id. at 1309. In contrast, in this case St. Paul did not charge a premium to insure Donahue as the alter ego of DSI.

Finally, the fact that St. Paul established a loss reserve because of this lawsuit is not an admission that it is liable to Plaintiff under the policies. As St. Paul points out, Ohio law requires insurance companies to establish loss reserves equal to the amount of any losses or claims for which it may be liable. See Ohio Rev. Code § 3929.012(A). Most courts are in agreement that setting aside a reserve is not an admission of liability where coverage under the policy is an issue, particularly where a state law or regulation requires insurance companies to establish reserves for claims. See Spearman Ind. Inc. v. St. Paul Fire & Marine Ins. Co., 128 F. Supp.2d 1148, 1154 (N.D.Ill. 2001); Fidelity & Dep. Co. of Md. v. McCulloch,

15

168 F.R.D. 516, 525 (E.D.Pa. 1996); <u>American Protection Ins. Co. v. Helm Concentrates, Inc.</u>, 140 F.R.D. 448, 449-50 (E.D.Cal. 1991); <u>J.C. Assoc. v. Fidelity & Guar. Ins. Co.</u>, No. Civ. A 01-2437 RJLCM, 2003 WL 1889015, at *2 (D.D.C. Apr. 15, 2001). Because the issue presented in this case is whether Donahue's theft is covered under the policies, and because Ohio state law requires insurance companies to establish reserves for claims, St. Paul's establishment of a reserve for Plaintiff's claim is not an admission of liability.

<u>Conclusion</u>

For the reasons stated, because Stephen G. Donahue was the dominate shareholder of Donahue Securities, Inc., he was not an "employee" within the meaning of the commercial crime insurance policies issued by Defendant St. Paul Fire & Marine Insurance Company.  Therefore, Plaintiff was not covered for the loss caused by Donahue's theft.  Accordingly, Defendant's motion for summary judgment is well-taken and is **GRANTED**.  As a result of this ruling, Defendant's motion to strike Plaintiff's summary judgment evidence is **MOOT.**

**IT IS SO ORDERED**

Date September 26, 2005                s/Sandra S. Beckwith
                                       Sandra S. Beckwith, Chief Judge
                                         United States District Court